UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | ) ) | |
| | ) | Civil Action No. 6:25-cv-167-CHB |
| Plaintiff, | ) ) | |
| v. | ) ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| ARCLINE ELEVATION SERVICES HOLDINGS, LLC, et al., | ) ) | |
| | ) | |
| Defendants. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the parties' responses to the Court's November 21, 2025 order. [R. 16]. In that order, the Court directed the parties to file simultaneous briefs on the issue of whether the Court should exercise its discretionary jurisdiction under the Declaratory Judgment Act. *Id.* The parties, which include Plaintiff Liberty Mutual Fire Insurance Company ("Liberty Mutual") and Defendants Arcline Elevation Services Holdings, LLC ("Arcline"), Brandon Smith, and Junior Smith, have filed their briefs, [R. 17], [R. 19], [R. 20], and replies, [R. 21], [R. 22], [R. 24], and [R. 25].[1] For the reasons set forth herein, the Court declines to exercise jurisdiction under the Declaratory Judgment Act. As such, the Court will dismiss this matter and deny the pending motions to dismiss, [R. 6], [R. 7],[2] as moot.

## I.  BACKGROUND

On or about April 30, 2024, Defendants Brandon and Junior Smith were involved in an

---

[1] Brandon Smith and Junior Smith jointly filed their response but filed it in the record twice. [R. 22], [R. 23].

[2] Brandon Smith and Junior Smith jointly filed a motion to dismiss but filed it in the record twice. [R. 6], [R. 7].

- 1 -

automobile accident in Perry County, Kentucky. [R. 1, ¶ 11]. At the time of the accident, Brandon Smith was employed by a subsidiary of Arcline and was operating a vehicle owned by Arcline. *Id.*

On November 6, 2024, the Smiths brought suit against the other driver, Hancel Slone, in Perry Circuit Court, alleging negligence. *Id.* ¶ 12. They also alleged that Hancel Slone was an underinsured motorist at the time of the accident. *Id.* Hancel Slone later filed an interpleading complaint naming his passenger, Juanita Slone, as a defendant. [R. 17, p. 2]. Juanita Slone eventually filed a counterclaim against Brandon Smith and Hancel Slone, also alleging negligence. *Id.*[3]

Meanwhile, the Smiths amended their complaint on or about January 16, 2025, to add Liberty Mutual as a defendant. *Id.* ¶ 13; *see also* [R. 9-2 (Amended State Court Complaint)]. Liberty Mutual had previously issued commercial fleet policy no. AS2-651-294593-024 (the "Policy") to Arcline, which was effective at the time of the April 2024 automobile accident. [R. 1, ¶ 10]; *see also* [R. 1-1 (the Policy)]. The Smiths alleged that, due to Hancel Slone's status as an underinsured driver, they were entitled to recover underinsured motorist, or UIM, benefits under the Policy.[4] *See* [R. 1-1, ¶ 14].

On February 11, 2025, Liberty Mutual filed an answer to the Smith's amended state court complaint. [R. 18-1]. Among other things, Liberty Mutual admitted that Brandon Smith was an insured under the Policy, but it "affirmatively state[d] that coverage is unavailable under the policy in question because the policy does not afford underinsured motor coverage applicable to the loss described in" the amended complaint. *Id.* ¶ 10. Liberty Mutual also argued that, "[i]f there are underinsured motorist benefits available under the policy for this accident, the alleged tortfeasor

---

[3] Arcline represents that this claim was referred to mediation on October 15, 2025. [R. 17, p. 2].

[4] The Smiths also named Kentucky Farm Bureau Mutual Insurance Company as a defendant and alleged that they were also entitled to recover underinsured motorists benefits from that defendant. *See* [R. 9-2, ¶ 13].

does not qualify as an 'underinsured motorist' under the relevant policy of insurance, and therefore [the Smiths] are not entitled to underinsured motorist benefits" from Liberty Mutual. *Id.* ¶ 16. As such, Liberty Mutual requested that the amended complaint be dismissed with prejudice. *Id.* at 4.

On September 15, 2025, Liberty Mutual filed its Complaint for Declaratory Judgment in this Court. [R. 1]. Liberty Mutual alleges that, "[a]lthough the Policy was in effect at the time of the collision, named insured, Arcline, neither purchased nor paid for UIM coverage on vehicles operated in Kentucky on the Policy and therefore did not maintain UIM coverage applicable to the collision between the Smiths and Hancel Slone." *Id.* ¶ 14. For support, Liberty Mutual points to the Policy's definition of the "covered autos" subject to uninsured and underinsured motorist benefits, which includes certain automobiles "licensed or principally garaged in" Florida, or otherwise "[a]pplies in the states of" Florida, New Jersey, New York, and North Carolina. *Id.* ¶ 18; *see also* [R. 1-1, p. 161]. Liberty Mutual also points to the Policy's "Uninsured/Underinsured Motorists Insurance (UM/UIM) Schedule." [R. 1, ¶ 18]. That schedule identifies the "state vehicle type options" as Florida, North Carolina, and New Jersey. *Id.*; *see also* [R. 1-1, p. 16]. From these provisions, Liberty Mutual argues that the Policy provides underinsured motorist coverage only for vehicles licensed or principally garaged in those states. *Id.* ¶ 19.

Liberty Mutual also alleges that, "[u]nder the laws of Kentucky, which require UIM coverage to be proactively and expressly requested by the insured as it is not mandatory coverage, such coverage does not exist under the Policy because the named insured, Arcline, did not request or purchase the same." *Id.* ¶ 22. Moreover, Liberty Mutual alleges, "[u]nder the laws of Kentucky, second class insureds cannot avail themselves of the doctrine of reasonable expectations because they have no reasonable expectation of coverage prior to the loss as they do not pay for benefits thereunder." *Id.* ¶ 23. As a result, Liberty Mutual alleges, "UIM benefits are not available to the

claimants under the Policy." *Id.* ¶ 15.

Liberty Mutual therefore "seeks a declaration from the Court that Arcline's Policy does not include UIM coverage applicable to the subject accident and that Liberty Mutual is under no duty to provide UIM benefits to the secondary insureds, Brandon Smith and Junior Smith." *Id.* ¶ 16; *see also* ¶ 24 ("Liberty Mutual hereby seeks a declaration from the Court that UIM benefits are not recoverable under the Policy for any claims arising out of the April 30, 2024 collision because the named insured, Arcline, did not request or purchase UIM coverage applicable to this accident in Kentucky under the Policy, and because Brandon Smith and Junior Smith are not otherwise entitled to such benefits under the reasonable expectations doctrine as they are second-class insureds."). In doing so, Liberty Mutual invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332 and jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. *Id.* ¶¶ 4–5.

Defendants Brandon and Junior Smith have since filed a Motion to Dismiss, arguing that "the current issue has already been raised in the state court action," and the state court "is in a better position to decide Kentucky law." [R. 6, p. 2]; *see also* [R. 7, p. 2]. Liberty Mutual responded, arguing that it "is well within its rights to seek declaratory relief from this Court," relying entirely on the alleged existence of diversity jurisdiction. [R. 9, p. 3]. But the parties failed to address the discretionary nature of the Court's jurisdiction under the Declaratory Judgment Act in their briefing. [5] As such, the Court ordered the parties to brief the issue of whether the Court should exercise jurisdiction under the Declaratory Judgment Act and to address the factors set forth in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir.

---

[5] As the Court has already explained, *see* [R. 16], "federal jurisdiction under [the Declaratory Judgment Act] is not the same as diversity or federal question jurisdiction because the statute 'confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, No. 12-39-ART, 2012 WL 3067579 (E.D. Ky. July 27, 2012) (quoting *Wilton*, 515 U.S. at 286). Thus, even where diversity jurisdiction exists, the Court may still decline to exercise discretionary jurisdiction under the Declaratory Judgment Act.

1984). *See* [R. 16]. The parties have now filed their briefs, [R. 17], [R. 19], [R. 20], and replies, [R. 21], [R. 22], [R. 24], and [R. 25].

This matter is therefore fully briefed and ripe for review. For the reasons set forth herein, the Court will decline to exercise its jurisdiction under the Declaratory Judgment Act, and will deny as moot the pending motions to dismiss, [R. 6], [R. 7].

## II. ANALYSIS

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). As the use of the permissive "may" suggests, "a district court's ability to hear an action under the Declaratory Judgment Act does not compel it to do so." *Grange Mut. Ins. Co. v. Safeco Ins. Co. of America*, 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942)). Rather, "this act '[c]onfers on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *see also Cardinal Health, Inc. v. National Union Fire Ins. Co. of Pittsburgh, PA*, 29 F.4th 792, 801 (6th Cir. 2022) ("We afford district courts 'substantial discretion to exercise jurisdiction in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp.'" (quoting *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008))).

However, "[d]istrict courts must exercise this discretion cautiously." *Id.*; *see also W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (explaining that Court's discretion under the Declaratory Judgment Act "must not be unguided"); *but see Cardinal Health*, 29 F.4th at 801

(explaining that the Sixth Circuit is reluctant to reverse a lower court's decision to abstain under *Grand Trunk*, and noting that it has "generally only done so when the district court did not engage in the *Grand Trunk* analysis at all" (citations omitted)). As courts within the circuit have previously explained, "We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Grange*, 565 F. Supp. 2d at 785 (internal citations omitted). The Sixth Circuit has similarly "cautioned district courts not to jump into the middle of ongoing litigation," noting that "declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court." *Id.* (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004)) (internal quotation marks omitted). Nevertheless, "no per se rule exists against exercising jurisdiction" under the Declaratory Judgment Act. *Id.* (citing *Bituminous*, 373 F.3d at 812–13).

The Sixth Circuit has identified two general principles to determine whether it would be appropriate to accept jurisdiction over a declaratory judgment action:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Grand Trunk*, 746 F.2d at 326 (citation omitted). With these general principles in mind, the Sixth Circuit articulated five factors to guide district courts as they consider whether to exercise jurisdiction under the Declaratory Judgment Act:

(1) whether the declaratory action would settle the controversy;
(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

- 6 -

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted). The Court will consider each of the *Grand Trunk* factors in turn.

### A. Factor One

The first *Grand Trunk* factor asks "whether the declaratory action would settle the controversy." *Id.* In the Sixth Circuit, "[t]wo lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Flowers*, 513 F.3d at 555. The key distinction between these two lines of precedent is whether the declaratory action must settle the controversy in the state court action, or whether it need only settle the insurance coverage dispute. Some cases hold that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* (citations omitted). "A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court." *Id.* (citations omitted).

The Sixth Circuit has examined the reasoning for this split and has "suggested that the contrary results found in these cases might be explained by their different factual scenarios." *White Pine Ins. Co. v. McIntosh*, 5:21-238-KKC, 2022 WL 2512771, *5 (E.D. Ky. July 6, 2022) (citing *Flowers*, 513 F.3d at 555); *see also Flowers*, 513 F.3d at 555–56 (discussing the two lines of precedent). For example, in cases involving "fact-based question[s] of state law" already before the state court, the Sixth Circuit has found that declaratory relief in the federal court would not settle the controversy. *See Flowers*, 513 F.3d at 555 (discussing *Bituminous*); *Bituminous*, 373 F.3d at 814–13 (explaining that this factor weighed against exercising jurisdiction where key

factual issues would be resolved in two independent state court proceedings); *Frankenmuth Mutual Ins. Co. v. Balis Campbell, Inc.*, 510 F.Supp.3d 482, 491–92 (E.D. Ky. 2020) (finding this factor weighed in favor of exercising jurisdiction where only the duty to defend was at issue, meaning that coverage issue could be resolved without further development of the facts); *General Star Nat'l Ins. Co. v. Terry Flinchum CPA, Inc.*, 6:22-CV-189-CHB, 2023 WL 3956150, *13 (June 12, 2023) (finding that the coverage issues could be resolved by looking only to the allegations in the complaint, meaning no relevant facts needed to be developed in state court and this factor weighed in favor of exercising jurisdiction); *Nautilus Ins. Co. v. KC Diamond Sports Studio, LLC*, No. 21-63-DLB, 2022 WL 2911656 (E.D. Ky. July 22, 2022) (explaining that factual determinations regarding a party's bodily injuries and damages, which were before the state court, were necessary to determining whether the insurance company owed a duty to indemnify).

The Sixth Circuit has also found that this first factor weighs against exercising jurisdiction where a declaratory judgment would not be binding on all relevant parties, such as when a state-court party is not joined in the federal action. *See, e.g.*, *id.* (discussing *Bituminous*); *Travelers Indem. Co. v. Bowling Green Prof. Assoc., PLC*, 495 F.3d 266, 272 (6th Cir. 2007) (noting that certain parties who may be affected by the Court's declaratory judgment were not joined in the federal action and therefore concluding that the first two factors weighed against exercising jurisdiction); *Bituminous*, 373 F.3d at 814 (finding that a declaratory judgment would *not* settle the controversy because a relevant party in the state court proceeding was not made party to the federal action).

Thus, this first factor presents a case-specific inquiry. *See, e.g.*, *White Pine Ins. Co.*, 2022 WL 2512771, at *5. Some common factual considerations include:

> whether the question was already being or could be considered in state court, whether the parties were the same in state and federal court, whether parties in the

state action would be bound by the federal court action to which they were not a part, whether the issue was one being developed by state court discovery, and whether the scope of coverage or obligation to defend was before the state court.

*Id.* (quoting *Grange*, 565 F. Supp. 2d at 786); *see also Flowers*, 513 F.3d at 555–56 (discussing factual differences between the two lines of cases).

In the present case, the relevant parties in the state court proceeding, namely, Liberty Mutual, Brandon Smith, and Junior Smith, are all parties in this federal proceeding. As such, the relevant parties in the state court action would be bound by a declaratory judgment from this Court. Thus, at least some of the factual considerations cited above weigh in favor of exercising jurisdiction.

Nevertheless, Arcline and the Smiths argue that this factor weighs against exercising jurisdiction. For their part, the Smiths note that a declaratory judgment in this case would not resolve the underlying negligence claims in the state court matter. [R. 19, p. 3]. Arcline, on the other hand, points to Liberty Mutual's answer in the state court proceedings, in which Liberty Mutual raises the same issues presently before this federal court, i.e., that it does not owe UIM benefits under the Policy. [R. 17, pp. 4–5]. Should the Court rule on these coverage issues, Arcline argues, the underlying controversy (i.e., the negligence claims) will still remain and could be "complicated" by this Court's ruling. *Id.* at 5.

The Court agrees. As noted above, Liberty Mutual's answer in the state court lawsuit specifically raises the coverage issues currently at issue in this declaratory action and even seeks dismissal of the claims against it based on those same arguments. *See* [R. 18-1, ¶ 10 (alleging that "coverage is unavailable under the policy in question because the policy does not afford underinsured motor coverage applicable to the loss described in" the amended state court complaint)]. Stated another way, Liberty Mutual has raised in the state court lawsuit the very

coverage-related issue which it now seeks to litigate in this federal lawsuit, that is, whether the Policy provides for UIM benefits under the specific facts of the state suit.

When coverage-related issues are *not* before the state court, courts have often found that this first *Grand Trunk* factor weighs in favor of exercising jurisdiction. *See White Pine*, 2022 WL 2512771, at *7 (collecting cases). But in the present case, the coverage-related issue (i.e., whether UIM benefits are available to the Smiths) *is* being litigated in the state court, via Liberty Mutual's addition to that case and its subsequent answer (and request for dismissal). Moreover, "competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible" counsel against exercising discretion. *Flowers*, 513 F.3d at 555; *see also Grange*, 565 F. Supp. 2d at 788–89 (acknowledging that a federal declaratory action would resolve the discrete question before the Court but recognizing that it would not "settle the ultimate controversy"). For this reason, and for those set forth above, the Court finds that the first *Grand Trunk* factor weighs against exercising jurisdiction. *See generally Crestbrook Ins. Co. v. Hatfield*, No. 5:24-CV-096-CHB, 2024 WL 4784965, at *7–8 (E.D. Ky. Nov. 14, 2024) (ruling similarly where the coverage issue was also being litigated in the state court via a third-party complaint).

### B. Factor Two

Factor two considers "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. This factor "is closely related to the first factor and is often considered in connection with it." *Flowers*, 513 F.3d at 557 (citing *Travelers*, 495 F.3d at 271–72). "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* (citing *Bituminous*, 373 F.3d at 814; *Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448, 454 (6th

- 10 -

Cir. 2003)).

As with the first factor, a split has developed among Sixth Circuit jurisprudence "concerning whether the district court decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id.* (citations omitted). In *Flowers*, the Sixth Circuit found "the former line of precedent to be more persuasive than the latter." *Id.* It explained,

> The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented. While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer. Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court.

*Id.*

Thus, in *Flowers*, the Court found that the second factor supported the district court's exercise of jurisdiction, as it clarified the legal relations at issue in that case—"namely, the contractual duties of indemnification owed by [the insurance company] to the [declaratory defendant]." *Id.* The Court noted that, "[w]hile [the declaratory action] did not clarify all of the legal relationships at issue in the state court action, the district court's decision did not create any confusion about the resolution of those issues," nor would it "confuse the state court's analysis of [the] liability issues." *Id.* In more recent decisions, the Sixth Circuit again affirmed the lower courts' exercise of jurisdiction, finding no abuse of discretion as to the second *Grand Trunk* factor where the declaratory action clarified the legal relationships of the parties to the declaratory action, but not the state court litigation. *See United Specialty Ins. Co. v. Cole's Place*, 936 F.3d 386, 398–99 (6th Cir. 2019); *Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 Fed. App'x 431, 438 (6th Cir. 2019).

- 11 -

The Court acknowledges that the requested declaratory judgment will resolve certain coverage issues between Liberty Mutual and the defendants. More specifically, it will resolve the question of whether any UIM coverage is available to the Smiths. Resolution of this coverage issue will not necessarily resolve all of the issues in the state court matter, of course, as the underlying negligence claims remain. However, while the requested declaratory judgment in this case will "not resolve the relative rights of all parties in the state-court litigation," it would at least resolve the state court claims against Liberty Mutual, which the Court understands relate only to Liberty Mutual's alleged obligation to provide UIM benefits. *See United Specialty*, 936 F.3d at 399. For these reasons, and under the Sixth Circuit's decision in *Flowers* and recent decisions like *United Specialty*, the Court finds this action will clarify the legal relations of the parties in this case.

However, the Court is mindful that "exercising jurisdiction would serve only a limited purpose in clarifying the legal relations at issue." *White Pine*, 2022 WL 2512771, at *9.[6] If this Court exercises jurisdiction, it must then go on to decide the coverage-related issues which are at the heart of Liberty Mutual's state court defenses (and its request for dismissal in the state court). Thus, this Court "could either reach the same conclusion as the state court, in which case the declaration would have been unnecessary and the federal litigation a waste of judicial resources, or . . . [this Court] could disagree with the state court, resulting in inconsistent judgments." *Corporex Development & Construction Management, LLC v. Baker Concrete Construction, Inc.*, No. 2:24-186-DCR, 2025 WL 836566, at *3 (E.D. Ky. Mar. 17, 2025) (quoting *Bituminous*, 373 F.3d at 816) (internal quotation marks omitted). "Thus, even if the controversy is 'settled' *in one forum*, it will frustrate the efficient expenditure of judicial resources." *Id.* (emphasis in original).

---

[6] This Court previously found in Abundance Coal that the declaratory action would clarify the legal relationships among the parties, but it nevertheless found that this factor weighed in favor of dismissal, stressing that the declaratory judgment must "serve a truly 'useful purpose' by clarifying the legal relationships among the parties." No. 12-39-ART, 2012 WL 3067579 at *6 (citations omitted).

As such, and giving the benefit of the doubt to Liberty Mutual on the issue, the Court finds that this second factor is, at best, neutral. *See Crestbrook*, 2024 WL 4784965, at*9 (ruling similarly); *but see Corporex*, 2025 WL 836566, at *3–4 (considering similar concerns and finding that the first and second factors weighed against exercising jurisdiction).

### C. Factor Three

Under the third *Grand Trunk* factor, the Court asks whether the declaratory judgment action "is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326. As to this factor, the Sixth Circuit has explained that "[f]iling a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Flowers*, 513 F.3d at 558). However, plaintiffs who file their suits shortly before the corresponding state court action is filed, "and who seem to have done so for the purpose of acquiring a favorable forum," are subject to scrutiny under this factor. *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)) (internal quotation marks omitted).

Typically, courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* (citations omitted). When no such evidence exists, courts often give the "benefit of the doubt" to the declaratory plaintiff and find that the third factor is neutral. *See, e.g.*, *Bituminous*, 373 F.3d at 814; *Cardinal Health*, 29 F.4th at 797 (acknowledging that some inconsistency in the way it has treated the third factor in the absence of evidence of procedural fencing, but finding no abuse of discretion where district court deemed the third factor neutral). In such cases, "this factor should be afforded little weight." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers*, 495 F.3d at 272); *see also United Specialty*, 936 F.3d at 399 (explaining that this factor "usually does not weigh heavily in the analysis").

In the present case, the Smiths acknowledge that this third factor does not weigh in favor of declining jurisdiction under the facts of this case. [R. 19, p. 4]. However, Arcline notes that Liberty Mutual "made no effort to request a declaration from the state court as to whether they are responsible for UIM coverage," and as such, this federal suit "appears to be an attempt by Liberty Mutual to try to get a beneficial ruling from federal court and avoid any risk involved with obtaining a decision from state court." [R. 17, p. 6]. Nevertheless, in its initial brief, Arcline argues that this factor is, at best, neutral. *Id.* However, in its response brief, Arcline argues that this third factor "weighs against [Liberty Mutual] as it appears it is trying to secure a favorable ruling in federal court rather than risk losing in the state court action." [R. 21, p. 3].

The Court finds no evidence of procedural fencing in this case. The present declaratory action was filed approximately eight months after the amended complaint was filed in the state court action. *See* [R. 1]; [R. 9-2].  Generally, courts "'do not make a finding of procedural fencing if the declaratory-judgment plaintiff filed *after* the commencement of litigation in state court.'" *Employers Mutual Casualty Co. v. Clifford*, No. 5:23-271-KKC, 2024 WL 2221445, *3 (May 15, 2024) (quoting *Cole's Place*, 936 F.3d at 399). And while Liberty Mutual is a party to the pending state court action and could have attempted to file for declaratory relief in state court, it was not obligated to do so. *See Flowers*, 513 F.3d at 558 ("While this action may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives Scottsdale the right to do precisely that, especially when the state court litigation has been ongoing for several years without resolving the issue."). Indeed, as noted above, "[f]iling a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Flowers*, 513 F.3d at 558).

The Court will therefore give the benefit of the doubt to Liberty Mutual that there was no

improper motive behind its federal filing. However, as noted above, "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers*, 495 F.3d at 272). Accordingly, this third factor is neutral, and the Court will afford it little weight.

### D. Factor Four

The fourth factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326. Like factors one and two, this factor focuses on the presence of novel or complicated state law or factual issues. *See, e.g.*, *United Specialty*, 936 F.3d at 400 ("For purposes of the fourth *Grand Trunk* factor, it is important simply to note that the question does not involve novel or complicated state-law or factual issues."); *Admiral Ins. Co. v. Fire-Dex, LLC*, No. 22-3992, 2023 WL 3963623, *3–4 (emphasizing that the coverage dispute turned on a novel issue of state law). On this point, the Supreme Court has warned that "a district court might be indulging in '[g]ratuitous interference'" if it permits a federal declaratory relief action to proceed when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court." *Flowers*, 513 F.3d at 559 (quoting *Wilton*, 515 U.S. at 283). "However, 'the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction.'" *Id.* at 560 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987)).

The Sixth Circuit has identified three subfactors to aid courts in considering this factor:

(1) whether the underlying factual issues are important to an informed resolution of the case;
(2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law

- 15 -

dictates a resolution of the declaratory judgment action.

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)); *see also United Specialty*, 936 F.3d at 396 (reciting the three subfactors). The Court addresses each subfactor in turn.

### i. Subfactor 1

Under the first subfactor, the Court must consider "whether the underlying factual issues are important to an informed resolution of the case." *Bituminous*, 373 F.3d at 814 (citing *Roumph*, 211 F.3d at 968). As this Court has explained,

> [w]hen the liability issues central to the state court proceeding are distinct from those central to the federal court proceeding, federal jurisdiction is appropriate, but when "the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court," the Court should decline to exercise its jurisdiction.

*Grange*, 565 F. Supp. 2d at 789 (citing *Flowers*, 513 F.3d at 560). For example, in *Flowers*, the parties agreed that the issues raised in the federal declaratory action were distinct from those raised in the state court litigation. *Flowers*, 513 F.3d at 560. Because the issues were distinct, that subfactor weighed in favor of exercising jurisdiction. *Id.*; *see also Grange*, 565 F. Supp. 2d at 789. Similarly, in *United Specialty*, the Sixth Circuit found this factor to weigh in favor of exercising jurisdiction because a comparison of the state court complaint and the federal declaratory judgment complaint revealed "no as-yet-unresolved factual issues [in the state court case] that stand between [the] federal court and its informed resolution of the coverage question." 936 F.3d at 400; *see also Wilcoxson v. Principal Life Ins. Co.*, 1:23-CV-00111-GNS-HBB, 2024 WL 1776390, at *4 (W.D. Ky. April 24, 2024) ("In cases seeking a declaration regarding 'the scope of insurance coverage,' the Sixth Circuit has 'recognized that such questions can sometimes be resolved as a matter of law and do not require factual findings.'" (quoting *Flowers*, 513 F.3d at 560)). On the other hand, if

the declaratory judgment action is dependent on factual findings that will be made by the state court or on an unresolved question of state law, this subfactor weighs against exercising jurisdiction. *See Massachusetts Bay*, 759 F. App'x at 439– 440; *Bituminous*, 373 F.3d at 815; *Travelers*, 495 F.3d at 272.

As to this first subfactor, the Smiths argue, albeit with little explanation, that, "without the benefit of a factual record, the Court cannot decide [the coverage question] without the risk of preempting the state court's determination of the facts." [R. 19, p. 5]. Arcline similarly argues that "there are significant factual issues regarding the policy coverage." [R. 17, p. 6]. For example, Liberty Mutual has argued, both in its answer in the state court lawsuit and its complaint in this federal action, that Arcline did not request or purchase UIM coverage for vehicles operated in Kentucky. *Id.* at 6–7. But, Arcline argues, this factual issue cannot be resolved based on the face of the policy alone. *Id.* at 7. Instead, those facts "are currently being examined in the state court action," which is also considering other factual issues raised by Liberty Mutual's answer, including whether Hancel Slone qualified as an underinsured driver and whether UIM benefits would otherwise be available for the underlying automobile accident, even assuming they were provided for under the Policy. *Id.* Thus, Arcline argues, "there remain several underlying factual issues that are necessary for resolution of the declaratory judgment action," and as a result, "exercising jurisdiction would be inappropriate under the first sub-factor." *Id.* Liberty Mutual, on the other hand, insists that these factual issues "are not material [to] the coverage question," and instead, "the central issue before the district court is whether UIM coverage is available under the Liberty policy issued to Arcline." [R. 24, p. 7]. This question, Liberty Mutual argues, is a "pure question of law [that] requires only a reading of the four corners of" the Policy. *Id.*

The Court disagrees with Liberty Mutual's characterization of the issues before this Court.

In its complaint for declaratory relief, Liberty Mutual expressly requests

> a declaration from the Court that UIM benefits are not recoverable under the Policy for any claims arising out of the April 30, 2024 collision because the named insured, Arcline, did not request or purchase UIM coverage applicable to this accident in Kentucky under the Policy, and because Brandon Smith and Junior Smith are not otherwise entitled to such benefits under the reasonable expectations doctrine as they are second-class insureds.

[R. 1, ¶ 24]. Thus, Liberty Mutual does not ask the Court to determine UIM coverage based on the terms of the Policy alone; instead, Liberty Mutual asks the Court to look beyond the four corners of the Policy to determine whether Arcline ever requested UIM coverage applicable to the Kentucky accident. This factual question, in turn, overlaps with the factual questions currently pending in the state court proceeding, by virtue of Liberty Mutual's addition as a state court defendant and its answer and defenses.

Simply put, at least some of the factual (and legal) issues at play in this federal declaratory action are the same factual (and legal) issues before the state court by virtue of Liberty Mutual's addition to that case and its answer and defenses, which includes a request to dismiss the claims against it based on the same arguments asserted in this federal action. As such, this declaratory judgment action does not involve "separate and distinct issues from the liability issues litigated in [the state court]." *Frankenmuth*, 510 F.Supp.3d at 496; *see also White Pine*, 2022 WL 2512771, at *12 (ruling similarly). This first subfactor therefore weighs against exercising jurisdiction.[7]

### ii. Subfactor 2

This second subfactor "focuses on which court, federal or state, is in a better position to

---

[7] Moreover, even assuming no further development of the facts is necessary to resolve the coverage dispute, and it can instead be resolved based on the terms of the Policy alone, in which case this subfactor might weigh more in favor of exercising jurisdiction, the other subfactors and factors, on balance, would still weigh in favor of declining jurisdiction. *See generally Frankenmuth*, 510 F. Supp. 3d at 495–98 (finding that the first subfactor weighed in favor of exercising jurisdiction where no further factual development was needed and the coverage issues were not before the state court, but on balance, the fourth subfactor was neutral or weighed slightly against exercising jurisdiction).

resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. Typically, this subfactor weighs in favor of exercising jurisdiction "when the state law is clear and when the state court is not considering the issues." *Id.* For example, "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Id.* (quoting *Northland*, 327 F.3d at 454); *see also Cardinal Health*, 29 F.4th at 799 ("If 'the state law is clear and . . . the state court is not considering the issues,' this subfactor has less force." (quoting *Flowers*, 513 F.3d at 560)). However, when the declaratory action involves novel issues of state law, it usually weighs against jurisdiction because "[w]e generally consider state courts to be in a better position to evaluate novel questions of state law." *Bituminous*, 373 F.3d at 814 (citing *Travelers*, 495 F.3d at 272). However, "novelty is not the only concern." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *4 (holding that while the state-law questions were not particularly novel, "this case involves only questions of state law . . . indicat[ing] the possibility of friction with the state court"). In some cases, the Sixth Circuit has placed greater emphasis on the state court's superior ability to resolve questions of state law, "without immediately pointing to the novelty of the state law issues." *Id.* (citing *Bituminous*, 373 F.3d at 815).

With respect to this second subfactor, none of the parties point to any novel questions of state law. *See* [R. 17, p. 7]; [R. 19, p. 5]; [R. 20, p. 13]. Regardless, as already explained, district courts in this circuit have repeatedly emphasized that "novelty is not the only concern." *Frankenmuth*, 510 F.Supp.3d at 497 (quoting *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *4) (internal quotation marks omitted); *see also General Star*, 2023 WL 3956150, at *17. Much like the present case, those cases presented questions of state, not federal law. *See*

- 19 -

*Frankenmuth*, 510 F.Supp.3d at 497; *General Star*, 2023 WL 3956150, at \*17. This Court explained that, "novel or not," the state law issue could be resolved by the state court, which had a "superior ability to apply its own law." *Frankenmuth*, 510 F.Supp.3d at 497; *General Star*, 2023 WL 3956150, at \*17; *see also Grange*, 565 F. Supp. 2d at 790 ("Since this is an insurance action, the state court is better situated to decide the issue, weighing against jurisdiction."). The Court found that this weighed against the exercise of jurisdiction. *Frankenmuth*, 510 F.Supp.3d at 497; *General Star*, 2023 WL 3956150, at \*17.

Nevertheless, in this case, Liberty Mutual insists this subfactor weighs in favor of exercising jurisdiction because "there are no unresolved factual issues relevant to the issue of coverage as competing bodily injury claims are the sole issues being litigated at the state court level." [R. 20, p. 13]. But the Court has already explained that the issue of whether UIM coverage is available under the Policy *is* being litigated in the state court, through Liberty Mutual's addition as a defendant in the state court lawsuit and its answer, in which it raises the same coverage issues at play in this federal suit. As such, the coverage issue, which involves questions of state law and which may require further factual development, is squarely before the state court, which will have a more complete picture of the facts before it. As a result, the Court finds that the state court is in a better position to determine the issues raised in this declaratory action. This second subfactor therefore weighs against exercising jurisdiction. *See White Pine Ins. Co.*, 2022 WL 2512771, at \*12 (noting that the issue of insurance coverage was already before the state court via a bad faith claim, a fact which weighed against exercising jurisdiction); *see also Flowers*, 513 F.3d at 560 ("[W]hen an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend [is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" (quoting *Northland*, 327

- 20 -

F.3d at 454)).

### iii.  Subfactor 3

Under the third subfactor, the Court must consider "whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action." *Bituminous*, 373 F.3d at 814–15 (citing *Roumph*, 211 F.3d at 968).  In other words, this subfactor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. For example, in cases involving insurance contract interpretation issues, the Sixth Circuit has held that such issues are generally "questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve." *Id.* (quoting *Travelers*, 495 F.3d at 273) (internal quotation marks omitted). This is true because "[t]he states regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F.3d at 815) (internal quotation marks omitted); *but see Northland*, 327 F.3d at 454 (finding that the Court's exercise of jurisdiction would not create friction between the state and federal courts).

As to this subfactor, Arcline and the Smiths argue that the state court is in a better position to apply state law and consider state policy issues relating to insurance contracts. [R. 17, p. 7]; [R. 19, p. 5]. The Court agrees that "this federal lawsuit implicates state policy that could be frustrated by the Court's exercise of jurisdiction." *General Star*, 2023 WL 3956150, at *18 (citing *Frankenmuth*, 510 F.Supp.3d at 497). The Sixth Circuit has made clear that "[i]nterpretation of Kentucky insurance contracts is guided by state public policy. Despite the clear indications from the Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a

better position to resolve the insurance policy interpretation in this case." *Flowers*, 513 F.3d at 561. This Court agrees with that analysis. *See, e.g.*, *Frankenmuth*, 510 F. Supp. 3d at 497.

Furthermore, the Sixth Circuit recently endorsed that same analysis in *United Specialty*, holding that "even in cases where state law has not been difficult to apply, this court has usually found that the interpretation of insurance contracts is closely entwined with state public policy." 936 F.3d at 401. The nexus between the legal issues in this case, which relate to the interpretation of two related insurance policies, and state policy is clear. "Relatedly, the *lack* of nexus between the state law issues presented and the federal forum is obvious—'[n]o federal-law questions are involved in the coverage issue' before the Court." *Frankenmuth*, 510 F.Supp.3d at 498 (quoting *United Specialty*, 936 F.3d at 401); *see also Cardinal Health*, 29 F.4th at 800 (explaining that in cases where "there are 'no federal laws . . . at issue,' this subfactor 'weighs against exercising jurisdiction" (quoting *Massachusetts Bay*, 759 F. App'x at 440); *Massachusetts Bay*, 759 F. App'x at 440 ("[N]o federal laws are at issue. This . . . weighs against exercising jurisdiction."). Simply put, "[t]his case does not turn on federal law, but rather Kentucky's interpretation of its insurance contracts—state law that is 'guided by state public policy.'" *Frankenmuth*, 510 F.Supp.3d at 498 (quoting *Flowers*, 513 F.3d at 561); *see also General Star*, 2023 WL 3956150, at *18. This subfactor therefore weighs strongly against exercising jurisdiction.

In sum, each of the three subfactors weigh against exercising jurisdiction, and the fourth *Grand Trunk* factor therefore weighs against exercising jurisdiction.

### E.  Factor Five

Under the final *Grand Trunk* factor, the Court must consider "whether there is an alternative remedy which is better or more effective." *Grand Trunk*, 746 F.2d at 326. In many cases involving insurance coverage issues, the Sixth Circuit has held that an alternative remedy is

available through a declaratory judgment under state law or an indemnity action in the state court at the conclusion of the liability proceedings. *See, e.g.*, *United Specialty*, 936 F.3d at 401–01; *Massachusetts Bay*, 759 Fed. App'x at 441–42; *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 816–17; *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462–63 (6th Cir. 1986). In those cases, the Court noted that the coverage issues involved questions of state law; they did not require application of federal common or statutory law. However, the Sixth Circuit has also acknowledged that "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action." *Flowers*, 513 F.3d at 562; *see also Penn-Star Ins. Co. v. Aral, Inc.*, 2:23-166-DCR, 2024 WL 992480, *3 (E.D. Ky. Mar. 7, 2024) (acknowledging that insurers may seek declaratory judgments in state court or file indemnity actions, "[b]ut the availability of such alternatives does not necessarily make them *better* or *more effective* than federal declaratory actions"); *White Pine Ins. Co.*, 2022 WL 2512771, at *14 (reciting similar language). On this issue, Sixth Circuit "precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction." *Flowers*, 513 F.3d at 562 (citations omitted); *see also Cardinal Health*, 29 F.4th at 801 (noting that "[o]ur precedent is 'somewhat inconsistent' with respect to the fifth factor" (quoting *Massachusetts Bay*, 759 F. App'x at 441)).

The Sixth Circuit provided some clarification on this issue in *Flowers*. In that case, the Sixth Circuit explained that, "rather than applying a general rule," the inquiry on this fifth factor "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562. There, the insurer sought a declaratory judgment that it had no duty to indemnify a therapist employed by the insured, a mental health services provider, in a state emotional distress suit stemming from the therapist's sexual affair with

a patient. *Id.* at 550–51. The Court noted that, under those circumstances, a state declaratory action would have been better than federal declaratory action "[i]n many ways." *Id.* For example, "Kentucky courts are in a superior position to resolve undecided questions of state law such as whether a therapist's sexual activities with his client are outside the scope of his employment." *Id.* at 562. The Kentucky courts would also have been able to combine the two actions, thereby allowing a single judge to resolve all issues. *Id.* However, the Sixth Circuit also acknowledged that Kentucky law provided clear guidance on this issue, so a federal declaratory action was not "clearly inferior." *Id.*

On the other hand, an indemnity action would *not* have been a superior remedy, because the insurer had attempted to join the state court action but had been prevented from doing so. *Id.* Even if the insurer joined the state court action, it would be required to wait until the liability issues were resolved before determining its obligations to the therapist. *Id.* "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.* More recently, however, the Sixth Circuit upheld the district court's determination that this factor weighed against exercising jurisdiction because a state court declaratory judgment action "would provide [the insurance company] with the same remedy it seeks in federal court, [and] the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401.

In the present case, Arcline and the Smiths argue that there is a better alternative available to Liberty Mutual in state court, that is, a request for declaration of rights under Kentucky Revised Statute ("KRS") § 418.040. [R. 17, p. 8]; [R. 19, p. 5]. Liberty Mutual, however, argues that "requiring the parties to wait out the state court proceeding before resolving the question of coverage would be a worse remedy than a federal declaratory judgment," and moreover, "a state court declaratory judgment is not a superior remedy based on the specific facts of this case because

the question before this Court is a legal interpretation—a sole question of well-established law which does not require the court to engage in any fact finding." [R. 20, p. 16].

Regarding Liberty Mutual's complaint that it would be required to "wait out the state court proceeding," the Sixth Circuit has acknowledged that similar "delayed alternative[s]" may be worse than seeking federal declaratory relief. *See Flowers*, 513 F.3d at 562 (finding that a state indemnity action at the conclusion of a state court lawsuit "would be worse, not better, than seeking a federal declaratory judgment"). Regardless, even assuming Liberty Mutual must now wait until the conclusion of the state court's liability proceedings to determine its payment obligations, a declaratory action in state court remains a better option than this federal declaratory action. First, the specific coverage issues before this Court involve questions of state law. Indeed, in its complaint seeking declaratory relief, Liberty Mutual repeatedly emphasizes Kentucky's specific laws regarding UIM benefits. *See* [R. 1, ¶¶ 22, 23]. Even assuming Kentucky law is clear on these issues, and a federal court could "confidently apply it without fear of creating conflicts with the Kentucky courts or intruding on their jurisdiction, *United Specialty*, 936 F.3d at 400, "Kentucky courts remain in a superior position to interpret that state law and apply it to the facts of this case." *Frankenmuth*, 510 F.Supp.3d at 500 (citing *Flowers*, 513 F.3d at 562).

Thus, a state declaratory action would provide Liberty Mutual with the same remedy that it seeks from this Court, and moreover, "the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401; *see also Massachusetts Bay*, 759 Fed. App'x at 441 (acknowledging that "Tennessee courts are in a superior position to resolve questions of state law"). Furthermore, a state court could combine the two actions (assuming both actions are filed in the same court), allowing a single judge to resolve all issues and avoiding the potential for confusing scheduling problems, issues with the orderly presentation of facts, and res

judicata issues. *See Flowers*, 513 F.3d at 562 ("The Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge."); *Massachusetts Bay*, 759 Fed. App'x at 441 (recognizing that the "Tennessee courts 'might also have been able to combine the two actions so that all issues could be resolved by the same judge.'" (quoting *Flowers*, 513 F.3d at 562)); *Employers Mutual Casualty Co. v. Clifford*, 5:23-271-KKC, 2024 WL 2221445, at *3 (E.D. Ky. May 15, 2024) ("A declaratory action in Kentucky state court also has the advantage of efficiency, allowing the coverage issue and the underlying state court action to be resolved by the same judge. That would allow the parties to litigate all the issues on one front, rather than two."); *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *5 (citation omitted). Moreover, Liberty Mutual does not argue—and the Court has no reason to believe—that Liberty Mutual's interests would not be adequately protected in a state court declaratory action or that the state court is not in a position to "define its own law in a fair and impartial manner." *Bituminous*, 373 F.3d at 816–17 (quoting *Am. Hom Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)).

For these reasons, the Court finds that a declaratory action in state court is a better remedy than this federal declaratory action, and this fifth factor therefore weighs heavily against accepting jurisdiction. *See Cardinal Health*, 29 F.4th at 801 (finding that district court did not abuse its discretion in deciding that this factor weighs against jurisdiction "given the availability of [a state court] declaratory action and the fact that the case involves solely state law issues" (citations omitted); *Frankenmuth*, 510 F.Supp.3d at 498–501 (similarly finding that the fifth factor weighs heavily against exercising jurisdiction where the insurance company could pursue the same declaratory relief in the state court); *General Star*, 2023 WL 3956150, at *18–19 (same); *but see Penn-Star Ins. Co.*, 2024 WL 992480, at *4 (finding that "judicial efficiency counsels against exercising jurisdiction" but "does not weigh so heavily as to tip the scales one way or the other

overall").

### F. Balancing the Factors

The Sixth Circuit has never articulated the relative weight of each *Grand Trunk* factor, acknowledging instead that the factors are not always equal. *Flowers*, 513 F.3d at 563; *Cardinal Health*, 29 F.4th at 797; *Admiral* at *2. This Court has explained, however, that "[t]he most important consideration in exercising this discretion [under the Declaratory Judgment Act] is whether retaining jurisdiction interferes with state-court litigation." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *2. The Sixth Circuit has also indicated that "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on [the] facts of the case." *Hoey*, 773 F.3d at 759; *Admiral*, at *2. In other words, the Court must balance the five *Grand Trunk* factors on a case-by-case basis. When balancing these five factors, the Court is afforded "unique and substantial" discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995).

In this case, the first, fourth, and fifth *Grand Trunk* factors weigh against exercising jurisdiction, and the second and third *Grand Trunk* factors are neutral, at best. Moreover, "considerations of efficiency, fairness, and federalism," *Hoey*, 773 F.3d at 759, also weigh against exercising jurisdiction. First, the parties are already litigating the coverage-related issues in the state court through Liberty Mutual's addition to that case, and its answer and defenses. If this Court accepts jurisdiction, it forces the parties to engage in litigation on two fronts "to receive a simple declaration of rights under an insurance contract—a matter that could easily be handled by the state courts that are more familiar with Kentucky insurance law in the first place." *Grange*, 565 F. Supp. 2d at 791. In fact, the state court "is positioned to decide every issue amongst all the parties in this matter, allowing the parties to fight this battle on a single front." *Id.* Furthermore, a federal declaratory action would deprive a state court of the opportunity to interpret and apply its own

- 27 -

law. Moreover, since the issue here is not one of federal law but instead involves state-regulated insurance contracts, an issue which this Court has no special interest, this Court is not a superior forum. By declining to exercise its substantial discretion to hear the case, this Court does not "rob" the insurance company of anything. *See id.* at 791–92. Indeed, Liberty Mutual has an adequate (perhaps even superior) remedy via a state court declaratory judgment action. *Id.* at 792.

Lastly, the Court notes that it should not exercise jurisdiction under the Declaratory Judgment Act "unless it serves a useful, practical purpose." *Id.* (quoting *Panhandle E. Pipe Line Co.*, 177 F.2d at 944). "[I]f our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Id.* at 785 (citations omitted). Accordingly, for the reasons set forth above, the Court finds that the *Grand Trunk* factors, when considered together and balanced against considerations of efficiency, fairness, and federalism, weigh heavily against the exercise of jurisdiction. *See Frankenmuth*, 510 F.Supp.3d at 498 (balancing the *Grand Trunk* factors similarly and declining jurisdiction even where some factors weighed in favor of accepting it); *White Pine Ins. Co.*, 2022 WL 2512771, at *15 (balancing the factors and declining jurisdiction, citing similar concerns); *General Star*, 2023 WL 3956150, at *19–20 (same).

### III. CONCLUSION

As set forth above, under the facts of this case, In this case, the first, fourth, and fifth *Grand Trunk* factors weigh against exercising jurisdiction, and the second and third factors are neutral, at best. Having balanced these five factors with "underlying considerations of efficiency, fairness, and federalism," and, considering the unique facts of this case, the Court will exercise its broad discretion to decline jurisdiction over this matter under the Declaratory Judgment Act. *See Wilton*, 515 U.S. at 286 (recognizing that district courts are afforded "unique and substantial" discretion

- 28 -

under the Declaratory Judgment Act).

       Accordingly, **IT IS HEREBY ORDERED** as follows:

1. Defendants Brandon and Junior Smith's Motions to Dismiss, [**R. 6**], [**R. 7**], are

   **DENIED as moot**.

2. The Court declines to exercise its discretion under the Declaratory Judgment Act, 28

   U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**. The

   Clerk of Court **SHALL STRIKE** this case from the Court's active docket.

This the 29th day of April, 2026.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY